IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GILEAD SCIENCES, INC.,     ) | |
|     ) | |
|     Plaintiff,     ) | |
|     ) | |
|     v.     ) | C.A. No. _____ |
|     ) | |
| CIPLA LTD.,     ) | |
|     ) | |
|     Defendant.     ) | |

**COMPLAINT**

Plaintiff Gilead Sciences, Inc. ("Gilead" or "Plaintiff"), by its attorneys, hereby alleges as follows:

**NATURE OF THE ACTION**

1. Gilead is a leading research-based pharmaceutical company that discovers, develops, and brings to market transformative medicines in areas of unmet medical need, including treatments for human immunodeficiency virus ("HIV"), hepatitis B virus, hepatitis C virus, liver diseases, serious cardiovascular and respiratory diseases, and cancer.

2. This case relates to Gilead's ODEFSEY®, which has benefited hundreds of thousands of people and is recognized as one of the most successful medicines in its class. Approved by the U.S. Food and Drug Administration ("FDA") in 2016, ODEFSEY® has been proven safe and effective for, among other things, HIV treatment. ODEFSEY® contains three main components—tenofovir alafenamide ("TAF"), emtricitabine ("FTC"), and rilpivirine ("RPV"). All three have contributed to the medicine's clinical and commercial success.

3. Gilead's extensive research and development program that resulted in ODEFSEY® led to numerous groundbreaking inventions. For example, Gilead invented several forms of TAF, including TAF hemifumarate, TAF monofumarate, and TAF sesquifumarate.

– 1 –

Gilead's invention of TAF hemifumarate is protected by U.S. Patent Nos. 8,754,065 and 9,296,769 (the "TAF Hemi Patents"), which, with applicable pediatric exclusivity, expire in February 2033.  The TAF Hemi Patents are listed in the FDA's *Approved Drug Products with Therapeutic Equivalence Evaluations* (the "Orange Book") for ODEFSEY®.  Gilead's invention of TAF sesquifumarate resulted in U.S. Patent No. 9,777,028 (the "TAF Sesqui Patent"), which expires in June 2036.  Gilead also invented novel chemical methods to produce TAF in an efficient, reliable, and commercially feasible manner.  That work resulted in U.S. Patent Nos. 8,664,386, 9,029,534, and 9,346,841 (the "TAF Process Patents"), which expire in October 2032.  The TAF Hemi Patents, the TAF Sesqui Patent, and the TAF Process Patents are, collectively, the "Patents-in-Suit."

4.    Seeking to benefit from Gilead's substantial investments, inventions, research and development, and data that resulted in ODEFSEY®, several generic pharmaceutical companies previously filed abbreviated new drug applications ("ANDAs") with the FDA for approval of generic versions of ODEFSEY® and another Gilead product, DESCOVY®, prior to the expiration of the TAF Hemi and other Orange Book patents.  One of those companies was Defendant Cipla Limited ("Cipla" or "Defendant").  Cipla submitted ANDA No. 214058 to FDA under 21 U.S.C. § 355(j) seeking approval to engage in the commercial manufacture, use, or sale of a product made under an ANDA referencing ODEFSEY® for the treatment of HIV-1 infection in adults and pediatric patients.  That case resulted in litigation about Cipla's infringement of the TAF Hemi Patents (and others) in this District between 2020 and 2022.  *See Gilead Scis., Inc. v. Apotex, Inc. et al.*, No. 20-189-MN (D. Del.) (the "TAF ANDA Litigation").  The TAF ANDA Litigation settled on the eve of trial.

5.      Cipla now wants a second bite at the apple.  Still seeking to benefit from Gilead's substantial investments, inventions, and data that resulted in ODEFSEY®, Cipla is requesting FDA approval of yet another TAF-containing product prior to the expiration of the Orange-Book-listed TAF Hemi Patents and the other Patents-in-Suit.  On information and belief, Cipla submitted New Drug Application No. 220757 ("Cipla's R/F/TAF 505(b)(2) Application") to the FDA pursuant to section 505(b)(2) of the Federal Food, Drug, and Cosmetic Act ("FDCA"), referencing Gilead's New Drug Application for ODEFSEY®.  Cipla's R/F/TAF 505(b)(2) Application seeks approval for Cipla to market emtricitabine/rilpivirine hydrochloride/tenofovir alafenamide fumarate oral tablets in 200 mg/EQ 25 mg/EQ 25 mg base strength ("Cipla's R/F/TAF 505(b)(2) Product").  On information and belief, Cipla's R/F/TAF 505(b)(2) Application included a certification pursuant to 21 U.S.C. § 355(b)(2)(A)(iv) (a "Paragraph IV Certification") for the TAF Hemi Patents.

6.      Cipla's R/F/TAF 505(b)(2) Application for ODEFSEY® follows on the heels of another attempt by Cipla to benefit from Gilead's investments and innovations in TAF research and development.  Cipla also filed a 505(b)(2) application referencing Gilead's New Drug Application for DESCOVY® in December 2025, and Gilead has sued Cipla for infringing the TAF Hemi Patents, the TAF Sesqui Patent, and the TAF Process Patents by filing that application.  *See Gilead Scis., Inc. v. Cipla Ltd.*, C.A. No. 26-149-MN (D. Del.).

7.      In view of Cipla's Paragraph IV Certification and information about Cipla's R/F/TAF 505(b)(2) Product that is currently available to Gilead, Gilead brings this action against Cipla for infringement of the Patents-in-Suit.  Cipla has infringed one or more claims of the TAF Hemi Patents and TAF Sesqui Patent under 35 U.S.C. § 271(e)(2)(A) by virtue of Cipla's filing of its R/F/TAF 505(b)(2) Application with a Paragraph IV Certification and seeking FDA

– 3 –

approval of its R/F/TAF 505(b)(2) Application prior to the expiration of the TAF Hemi Patents and TAF Sesqui Patent.  Additionally, on information and belief, Cipla will imminently infringe one or more claims of the TAF Hemi Patents, the TAF Sesqui Patent, and the TAF Process Patents under 35 U.S.C. §§ 271(a), (b), and/or (g) by making, using, offering for sale, selling, and/or importing Cipla's R/F/TAF 505(b)(2) Product in or into the United States.

## PARTIES

8.      Gilead is a corporation organized and existing under the laws of Delaware, having a principal place of business at 333 Lakeside Drive, Foster City, California 94404.

9.      Gilead's mission is to discover, develop, and deliver innovative therapeutics for people with life-threatening diseases, including treatments and preventatives for HIV infection. Gilead sells ODEFSEY® in this judicial district and throughout the United States.

10.     On information and belief, Cipla is a company organized and existing under the laws of India, having its principal place of business at Cipla House, Peninsula Business Park, Ganpatrao Kadam Marg, Lower Parel, Mumbai 400013, India.

## JURISDICTION & VENUE

11.     This action arises under the patent laws of the United States of America, 35 U.S.C. §§ 100 *et seq.*, and this Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

12.     The Court also has jurisdiction under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.  An actual, substantial, and justiciable controversy exists between Gilead and Cipla of sufficient immediacy and reality to warrant the issuance of a declaratory judgment regarding the parties' adverse legal interests with respect to the Patents-in-Suit.

13.     This Court has personal jurisdiction over Cipla by virtue of, among other things, its systematic and continuous contacts with this jurisdiction.  On information and belief, either

directly or through its subsidiaries, agents, and/or affiliates, Cipla regularly and continuously transacts business within Delaware, including by manufacturing, selling, offering for sale, marketing, distributing, and/or importing generic versions of pharmaceutical products in the United States, including Delaware.  On information and belief, either directly or through its subsidiaries, agents, and/or affiliates, the FDA has approved more than 190 Cipla applications seeking to market and sell pharmaceutical products throughout the United States, including in Delaware.  On information and belief, Cipla derives substantial revenue from the sale of those products in Delaware and has availed itself of the privilege of conducting business within Delaware.

14.    On information and belief, Cipla markets and distributes its pharmaceutical products through subsidiaries, agents, and/or affiliates including Cipla USA Inc., a Delaware corporation that is registered to do business and has appointed an agent to accept service in Delaware.

15.    This Court also has personal jurisdiction because Cipla has filed its R/F/TAF 505(b)(2) Application seeking approval from the FDA to market and sell its R/F/TAF 505(b)(2) Product throughout the United States, including in Delaware.  On information and belief, Cipla intends to commercially manufacture, use, and sell Cipla's R/F/TAF 505(b)(2) Product upon receiving FDA approval.  On information and belief, if and when the FDA approves Cipla's R/F/TAF 505(b)(2) Application, Cipla's R/F/TAF 505(b)(2) Product would, among other things, be marketed, distributed and sold in Delaware, and/or prescribed by physicians practicing and dispensed by pharmacies located within Delaware, all of which would have a substantial effect on Delaware.  By filing its R/F/TAF 505(b)(2) Application, Cipla has made clear that it intends

to use its distribution channels to direct sales of Cipla's R/F/TAF 505(b)(2) Product into Delaware.

16.     Further, this Court has personal jurisdiction over Cipla because Cipla has previously been sued in this District and has not challenged personal jurisdiction, and Cipla has affirmatively availed itself of this Court's jurisdiction by filing counterclaims in this District. *See, e.g.*, *Gilead Scis., Inc. v. Cipla Ltd.*, C.A. No. 26-149-MN, D.I. 12 (D. Del. May 15, 2026); *Acerta Pharma B.V.  v. Cipla Ltd.*, C.A. No. 24-587, D.I. 10 (D. Del. July 22, 2024); *Astellas Pharma Inc. v. Cipla Ltd.*, C.A. No. 24-1333, D.I. 24 (D. Del. Feb. 18, 2025).  Indeed, Cipla litigated the TAF ANDA Litigation, which was a case and counterclaims involving Cipla's infringement of the TAF Hemi Patents, to the eve of trial in this District.  *See Gilead Scis., Inc. v. Apotex, Inc. et al.*, C.A. No. 20-189-MN (D. Del.).  Upon information and belief, Cipla has also availed itself of the legal protections of the State of Delaware by having filed suit in this jurisdiction.  *See, e.g.*, *Cipla Ltd. v. Boehringer Ingelheim Pharms. Inc.*, C.A. No. 22-300, D.I. 2 (D. Del. Mar. 4, 2022); *Cipla Ltd. v. AstraZeneca AB*, C.A. No. 19-733, D.I. 2 (D. Del. Apr. 24, 2019).

17.     Alternatively, this Court may exercise personal jurisdiction over Cipla pursuant to Federal Rule of Civil Procedure 4(k)(2) because (a) Gilead's claims arise under federal law; (b) Cipla is a foreign company not subject to personal jurisdiction in the courts of any state; and (c) Cipla has sufficient contacts with the United States as a whole, including but not limited to marketing and/or selling generic pharmaceutical products that are distributed and sold throughout the United States, such that this Court's exercise of jurisdiction over Cipla satisfies due process.

18.     Venue is proper in this Court under 28 U.S.C. § 1391(c)(3) because Cipla is a foreign corporation and may be sued in any judicial district in the United States in which it is subject to the court's personal jurisdiction, including in this District.

## BACKGROUND

19.     Gilead developed a groundbreaking HIV antiviral called tenofovir in the 1990s. Tenofovir is a potent HIV antiviral, but it is not viable as an oral medicine.  To bring this breakthrough to patients, Gilead chemists needed to find ways to change tenofovir to make it orally bioavailable while retaining its remarkable activity.  Gilead did this by creating and studying many prodrugs of tenofovir—molecules that can be absorbed by the body and then convert to tenofovir once in the body or in target cells.

20.     TAF is one of the tenofovir prodrugs that Gilead invented.  TAF has the following chemical structure:

Notably, TAF has three stereocenters, including one at its phosphorus atom.  This makes TAF difficult to manufacture at commercially viable levels.

21.     Gilead continued to study TAF and discovered that it was remarkably effective. Gilead found that TAF was ten times more active than another leading tenofovir prodrug (called TDF) and exhibited a surprising and unexpected ability to accumulate tenofovir preferentially in the cells that serve as an HIV reservoir.

22.     Gilead began developing TAF as a clinical candidate in 2010.  At that point, Gilead needed a commercially feasible way to make TAF.  One way Gilead solved this problem was to invent a new manufacturing technique for TAF.  Gilead discovered a synthetic route to TAF that substantially increased the useful yield for the TAF manufacturing process and made it commercially feasible.

23.     A second way that Gilead solved this problem was to study many different multi-component forms of TAF, such as salts, cocrystals, hydrates, and solvates.  Gilead discovered a form of TAF called TAF monofumarate ("TAF Mono"), which is a composition in which one molecule of TAF is associated with one molecule of fumaric acid.  It also discovered a form called TAF hemifumarate ("TAF Hemi")—a composition in which two molecules of TAF are associated with one molecule of fumaric acid.  TAF Hemi is the TAF fumarate drug substance in ODEFSEY®.

24.     TAF (in its hemifumarate form) was first approved by the FDA as a component of Gilead's GENVOYA®, which is indicated for HIV treatment.  Today, TAF is a component of six FDA-approved medicines.[1]  TAF-containing medicines have become a preferred treatment option for HIV and hepatitis B virus in many patient populations.  It is estimated that millions of people with HIV worldwide have used TAF-based medicines.

25.     ODEFSEY® is one of those TAF-based medicines.  Gilead holds approved NDA No. 208351 for ODEFSEY® tablets containing 200 mg emtricitabine, 25 mg rilpivirine

---

[1] Many HIV medicines are fixed-dose combinations—single tablets that contain multiple active components, like TAF.  TAF is a component in GENVOYA®, ODEFSEY®, DESCOVY®, BIKTARVY®, and SYMTUZA® fixed-dose combination medicines.  TAF is also in a medicine called VEMLIDY®.

hydrochloride, and 25 mg of TAF base equivalents.  ODEFSEY® was approved for HIV treatment in 2016.

**PATENTS-IN-SUIT**

26.     On June 17, 2014, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 8,754,065 (the "'065 Patent"), titled "Tenofovir Alafenamide Hemifumarate."  A true and correct copy of the '065 Patent is attached hereto as Exhibit A.  The claims of the '065 Patent are valid, enforceable, and will not expire until February 15, 2033 (with applicable pediatric exclusivity).  Gilead is the assignee of the '065 Patent and has the right to enforce it.

27.     On March 29, 2016, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 9,296,769 (the "'769 Patent"), titled "Tenofovir Alafenamide Hemifumarate."  A true and correct copy of the '769 Patent is attached hereto as Exhibit B.  The claims of the '769 Patent are valid, enforceable, and will not expire until February 15, 2033 (with applicable pediatric exclusivity).  Gilead is the assignee of the '769 Patent and has the right to enforce it.

28.     On October 3, 2017, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 9,777,028 (the "'028 Patent"), titled "Co-Crystals, Salts and Solid Forms of Tenofovir Alafenamide."  A true and correct copy of the '028 Patent is attached hereto as Exhibit C.  The claims of the '028 Patent are valid, enforceable, and will not expire until June 13, 2036.  Gilead is the assignee of the '028 Patent and has the right to enforce it.

29.     On March 4, 2014, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 8,664,386 (the "'386 Patent"), titled "Methods for Preparing Anti-Viral Nucleotide Analogs."  A true and correct copy of the '386 Patent is attached hereto as Exhibit D. The claims of the '386 Patent are valid, enforceable, and will not expire until October 3, 2032. Gilead is the assignee of the '386 Patent and has the right to enforce it.

30. On May 12, 2015, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 9,029,534 (the "'534 Patent"), titled "Methods for Preparing Anti-Viral Nucleotide Analogs." A true and correct copy of the '534 Patent is attached hereto as Exhibit E. The claims of the '534 Patent are valid, enforceable, and will not expire until October 3, 2032. Gilead is the assignee of the '534 Patent and has the right to enforce it.

31. On May 24, 2016, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 9,346,841 (the "'841 Patent"), titled "Methods for Preparing Anti-Viral Nucleotide Analogs." A true and correct copy of the '841 Patent is attached hereto as Exhibit F. The claims of the '841 Patent are valid, enforceable, and will not expire until October 3, 2032. Gilead is the assignee of the '841 Patent and has the right to enforce it.

32. At least one claim of each of the TAF Hemi Patents covers ODEFSEY® or approved methods of using ODEFSEY®. Gilead's commercial process for manufacturing ODEFSEY® also practices at least one claim of the TAF Process Patents.

## CIPLA'S INFRINGEMENT OF THE PATENTS-IN-SUIT

33. On information and belief, Cipla submitted its R/F/TAF 505(b)(2) Application seeking the FDA's approval to engage in the commercial manufacture, use, importation, offer for sale, and/or sale of Cipla's R/F/TAF 505(b)(2) Product in or into the United States before the expiration of each Patent-in-Suit.

34. By letter dated June 25, 2026, and received by Gilead via Federal Express no earlier than June 29, 2026, Cipla notified Gilead that Cipla had submitted its R/F/TAF 505(b)(2) Application to the FDA, seeking approval to market Cipla's R/F/TAF 505(b)(2) Product in reliance on Gilead's investments, inventions, and data ("Cipla's Notice Letter").

35. By submitting its R/F/TAF 505(b)(2) Application and as stated in its Notice Letter, Cipla has represented to the FDA that its R/F/TAF 505(b)(2) Product contains

FTC/RPV/TAF in the same dosage amounts as ODEFSEY®; that Cipla desires for the FDA to rely on Gilead's ODEFSEY® data to approve Cipla's R/F/TAF 505(b)(2) Product; and that Cipla's R/F/TAF 505(b)(2) Application contains data as required to show that its R/F/TAF 505(b)(2) Product has the same bioavailability as and/or is bioequivalent to ODEFSEY®.

36.    Upon information and belief, Cipla's R/F/TAF 505(b)(2) Application included a Paragraph IV Certification with respect to the TAF Hemi Patents.  According to its Notice Letter, Cipla has alleged to the FDA "that in Cipla's opinion and to the best of its knowledge, the '065 and '769 patents are invalid, unenforceable and/or will not be infringed by the commercial manufacture, use or sale of the drug product described in Cipla's 505(b)(2) application," and that Cipla seeks approval to engage in the commercial manufacture, use, and sale of its R/F/TAF 505(b)(2) Product in the United States before the TAF Hemi Patents expire.  Cipla's Notice Letter also claims that "Cipla prepares its [R/F/TAF] 505(b)(2) Product in India, not the United States."

37.    Cipla's Notice Letter imposed unreasonable restrictions on Gilead's ability to fully assess evidence of Cipla's infringement.  Although Cipla's Notice Letter included an Offer of Confidential Access ("OCA"), that OCA did not comply with the Hatch-Waxman Act.  Under 21 U.S.C. § 355(c)(3)(D)(i)(III), an OCA "shall contain such restrictions as to persons entitled to access, and on the use and disposition of any information accessed, as would apply had a protective order been entered for the purpose of protecting trade secrets and other confidential business information."  Cipla's OCA contained unreasonable restrictions, above and beyond those that would apply under a protective order.  Cipla ultimately produced documents that purport to be its R/F/TAF 505(b)(2) Application under different confidentiality terms on July 22, 2026.

– 11 –

38.     On information and belief, Cipla's R/F/TAF 505(b)(2) Product will contain a TAF fumarate that Cipla, in its Notice Letter, contends is TAF monofumarate.  On information and belief, the processes used to prepare TAF fumarates, including in particular TAF monofumarate, can produce other fumarate forms as well, including TAF hemifumarate and TAF sesquifumarate.  For example, European Patent No. 3,411,378 B1 describes a method for the "[p]reparation of tenofovir alafenamide monofumarate" that yields "a mixture of tenofovir alafenamide monofumarate form I and tenofovir alafenamide hemifumarate."  Therefore, on information and belief based on the information presently known to Gilead, Cipla's R/F/TAF 505(b)(2) Product will contain multiple forms of TAF fumarate, including TAF monofumarate, TAF hemifumarate, and TAF sesquifumarate.  Gilead requires discovery from Cipla, including samples of Cipla's R/F/TAF 505(b)(2) Product, in order to assess the exact composition of its product.

39.     On information and belief, Cipla's R/F/TAF 505(b)(2) Product will also include TAF prepared according to the process claimed in one or more of the TAF Process Patents.  As described above, Gilead's extensive experience with TAF revealed that it was difficult to produce TAF on a commercial scale without using the inventions claimed in the TAF Process Patents.  On information and belief based on the information presently known to Gilead, it is likely that Cipla's R/F/TAF 505(b)(2) Product will be produced utilizing the process claimed in one or more of the TAF Process Patents.

40.     On information and belief, Cipla is seeking approval to market its R/F/TAF 505(b)(2) Product for some or all of the same approved indications as ODEFSEY®.  On information and belief, Cipla's proposed label for its R/F/TAF 505(b)(2) Product will instruct

physicians and healthcare providers to administer Cipla's R/F/TAF 505(b)(2) Product for, among other things, the treatment of HIV-1 infection in adults and pediatric patients.

41.    Under the Hatch-Waxman Act, an owner of a patented medicine must file an action in federal court within 45 days of receiving a Paragraph IV notice letter in order to receive certain benefits under the Act, including a stay of approval of the 505(b)(2) application for up to 30 months during the pendency of litigation, as appropriate, pursuant to 21 U.S.C. § 355(c)(3)(C).  Gilead has filed this action before the expiration of forty-five days from the date of Gilead's receipt of the Notice Letter.

## CLAIMS FOR RELIEF

### COUNT I:  INFRINGEMENT OF U.S. PATENT NO. 8,754,065

42.    Each of the preceding paragraphs 1–41 is incorporated as if fully set forth herein.

43.    On information and belief based on the information presently available to Gilead, Cipla's submission of Cipla's R/F/TAF 505(b)(2) Application to obtain approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Cipla's R/F/TAF 505(b)(2) Product in or into the United States before the expiration of the '065 Patent constituted a statutory act of infringement of at least one claim of the '065 Patent, either literally or under the doctrine of equivalents, including but not limited to claim 1, entitling Gilead to relief under 35 U.S.C. § 271(e)(2)(A).

44.    On information and belief based on the information presently available to Gilead, upon FDA approval of Cipla's R/F/TAF 505(b)(2) Application, Cipla will infringe at least one claim of the '065 Patent under 35 U.S.C. § 271(a), including but not limited to claim 1, either literally or under the doctrine of equivalents, by making, using, offering to sell, or selling Cipla's R/F/TAF 505(b)(2) Product in the United States or by importing Cipla's R/F/TAF 505(b)(2)

– 13 –

Product into the United States.  This entitles Gilead to a declaratory judgment and associated relief.

45.    On information and belief based on the information presently available to Gilead, upon FDA approval of Cipla's R/F/TAF 505(b)(2) Application, Cipla will also actively induce infringement of at least one claim of the '065 Patent under 35 U.S.C. § 271(b), including but not limited to claim 1, either literally or under the doctrine of equivalents, by encouraging others, including but not limited to distributors, healthcare providers, and patients, to use, offer for sale, or sell Cipla's R/F/TAF 505(b)(2) Product in the United States, or to import Cipla's R/F/TAF 505(b)(2) Product into the United States.  Upon information and belief, Cipla has knowledge of the '065 Patent—which was the subject of the TAF ANDA Litigation—and knowledge that its acts are encouraging infringement.  This also entitles Gilead to a declaratory judgment and associated relief.

46.    A definite and concrete, real and substantial, justiciable controversy of sufficient immediacy and reality exists between Gilead and Cipla regarding infringement of the '065 Patent under 35 U.S.C. §§ 271(a) and (b).  Cipla has submitted its R/F/TAF 505(b)(2) Application to the FDA seeking to market its R/F/TAF 505(b)(2) Product in the United States upon approval.  Cipla's Notice Letter states that Cipla is seeking to obtain approval to engage in the commercial manufacture, use, or sale of its R/F/TAF 505(b)(2) Product before the expiration of the '065 Patent.  On information and belief, Cipla has made and will continue to make substantial and meaningful preparations to import into the United States or to offer to sell, sell, or use within the United States Cipla's R/F/TAF 505(b)(2) Product prior to the expiration of the '065 Patent.

47.    On information and belief, FDA assesses and seeks to act on 505(b)(2) applications within ten months of submission.  On information and belief, there is immediacy

– 14 –

and imminent risk of infringement of the '065 Patent because FDA approval and Cipla's

commercialization of Cipla's R/F/TAF 505(b)(2) Product may occur as early as late 2026, but

for the 30-month stay caused by this litigation.  *See* FDA, PDUFA Reauthorization Performance

Goals and Procedures Fiscal Years 2023 Through 2027, at 4 (stating FDA's commitment to

"[r]eview and act on 90 percent of priority non-NME original NDA submissions [including

505(b)(2) applications] within 6 months of receipt" and "90 percent of standard non-NME

original NDA submissions within 10 months of receipt").  Cipla's actions, including, but not

limited to, the submission of its R/F/TAF 505(b)(2) Application with a Paragraph IV

Certification and Cipla's systematic attempts to meet the applicable regulatory requirements for

approval of its R/F/TAF 505(b)(2) Application indicate a refusal to change its course of action

and intent to launch imminently.

48.    Pursuant to 28 U.S.C. § 2201, Gilead is entitled to a declaratory judgment that

Cipla's manufacture, use, offer for sale, sale and/or importation of Cipla's R/F/TAF 505(b)(2)

Product in or into the United States prior to expiration of the '065 Patent, and Cipla's

inducement of such conduct, will infringe the '065 Patent pursuant to at least 35 U.S.C.

§§ 271(a) and/or (b).

49.    If Cipla's marketing and sale of Cipla's R/F/TAF 505(b)(2) Product prior to

expiration of the '065 Patent and all other relevant exclusivities are not enjoined, Gilead will

suffer substantial and irreparable harm for which there is no adequate remedy at law.

### COUNT II:  INFRINGEMENT OF U.S. PATENT NO. 9,296,769

50.    Each of the preceding paragraphs 1–41 is incorporated as if fully set forth herein.

51.    On information and belief based on the information presently available to Gilead,

Cipla's submission of Cipla's R/F/TAF 505(b)(2) Application to obtain approval to engage in the

commercial manufacture, use, offer for sale, sale, and/or importation of Cipla's R/F/TAF

505(b)(2) Product in or into the United States before the expiration of the '769 Patent constituted a statutory act of infringement of at least one claim of the '769 Patent, either literally or under the doctrine of equivalents, including but not limited to claim 1, entitling Gilead to relief under 35 U.S.C. § 271(e)(2)(A).

52.     On information and belief based on the information presently available to Gilead, upon FDA approval of Cipla's R/F/TAF 505(b)(2) Application, Cipla will infringe at least one claim of the '769 Patent under 35 U.S.C. § 271(a), including but not limited to claim 1, either literally or under the doctrine of equivalents, by making, using, offering to sell, or selling Cipla's R/F/TAF 505(b)(2) Product in the United States or by importing Cipla's R/F/TAF 505(b)(2) Product into the United States.  This entitles Gilead to a declaratory judgment and associated relief.

53.     On information and belief based on the information presently available to Gilead, upon FDA approval of Cipla's R/F/TAF 505(b)(2) Application, Cipla will also actively induce infringement of at least one claim of the '769 Patent under 35 U.S.C. § 271(b), including but not limited to claim 1, either literally or under the doctrine of equivalents, by encouraging others, including but not limited to distributors, healthcare providers, and patients, to use, offer for sale, or sell Cipla's R/F/TAF 505(b)(2) Product in the United States, or to import Cipla's R/F/TAF 505(b)(2) Product into the United States.  Upon information and belief, Cipla has knowledge of the '769 Patent—which was the subject of the TAF ANDA Litigation—and knowledge that its acts are encouraging infringement.  This also entitles Gilead to a declaratory judgment and associated relief.

54.     A definite and concrete, real and substantial, justiciable controversy of sufficient immediacy and reality exists between Gilead and Cipla regarding infringement of the '769 Patent

under 35 U.S.C. §§ 271(a) and (b).  Cipla has submitted its R/F/TAF 505(b)(2) Application to the FDA seeking to market its R/F/TAF 505(b)(2) Product in the United States upon approval. Cipla's Notice Letter states that Cipla is seeking to obtain approval to engage in the commercial manufacture, use, or sale of its R/F/TAF 505(b)(2) Product before the expiration of the '769 Patent.  On information and belief, Cipla has made and will continue to make substantial and meaningful preparations to import into the United States or to offer to sell, sell, or use within the United States Cipla's R/F/TAF 505(b)(2) Product prior to the expiration of the '769 Patent.

55.    On information and belief, FDA assesses and seeks to act on 505(b)(2) applications within ten months of submission.  On information and belief, there is immediacy and imminent risk of infringement of the '769 Patent because FDA approval and Cipla's commercialization of Cipla's R/F/TAF 505(b)(2) Product may occur as early as late 2026, but for the 30-month stay caused by this litigation.  *See* FDA, PDUFA Reauthorization Performance Goals and Procedures Fiscal Years 2023 Through 2027, at 4 (stating FDA's commitment to "[r]eview and act on 90 percent of priority non-NME original NDA submissions [including 505(b)(2) applications] within 6 months of receipt" and "90 percent of standard non-NME original NDA submissions within 10 months of receipt").  Cipla's actions, including, but not limited to, the submission of its R/F/TAF 505(b)(2) Application with a Paragraph IV Certification and Cipla's systematic attempts to meet the applicable regulatory requirements for approval of its R/F/TAF 505(b)(2) Application indicate a refusal to change its course of action and intent to launch imminently.

56.    Pursuant to 28 U.S.C. § 2201, Gilead is entitled to a declaratory judgment that Cipla's manufacture, use, offer for sale, sale and/or importation of Cipla's R/F/TAF 505(b)(2) Product in or into the United States prior to expiration of the '769 Patent, and Cipla's

inducement of such conduct, will infringe the '769 Patent pursuant to at least 35 U.S.C. §§ 271(a) and/or (b).

57.    If Cipla's marketing and sale of Cipla's R/F/TAF 505(b)(2) Product prior to expiration of the '769 Patent and all other relevant exclusivities are not enjoined, Gilead will suffer substantial and irreparable harm for which there is no adequate remedy at law.

## COUNT III:  INFRINGEMENT OF U.S. PATENT NO. 9,777,028

58.    Each of the preceding paragraphs 1–41 is incorporated as if fully set forth herein.

59.    On information and belief based on the information presently available to Gilead, Cipla's submission of Cipla's R/F/TAF 505(b)(2) Application to obtain approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Cipla's R/F/TAF 505(b)(2) Product in or into the United States before the expiration of the '028 Patent constituted a statutory act of infringement of at least one claim of the '028 Patent, either literally or under the doctrine of equivalents, including but not limited to claim 7, entitling Gilead to relief under 35 U.S.C. § 271(e)(2)(A).

60.    On information and belief based on the information presently available to Gilead, upon FDA approval of Cipla's R/F/TAF 505(b)(2) Application, Cipla will infringe at least one claim of the '028 Patent under 35 U.S.C. § 271(a), including but not limited to claim 7, either literally or under the doctrine of equivalents, by making, using, offering to sell, or selling Cipla's R/F/TAF 505(b)(2) Product in the United States or by importing Cipla's R/F/TAF 505(b)(2) Product into the United States.  This entitles Gilead to a declaratory judgment and associated relief.

61.    On information and belief based on the information presently available to Gilead, upon FDA approval of Cipla's R/F/TAF 505(b)(2) Application, Cipla will also actively induce infringement of at least one claim of the '028 Patent under 35 U.S.C. § 271(b), including but not

limited to claim 7, either literally or under the doctrine of equivalents, by encouraging others, including but not limited to distributors, healthcare providers, and patients, to use, offer for sale, or sell Cipla's R/F/TAF 505(b)(2) Product in the United States, or to import Cipla's R/F/TAF 505(b)(2) Product into the United States. Upon information and belief, Cipla has knowledge of the '028 Patent and knowledge that its acts are encouraging infringement, including at least because Gilead provided notice of the patent and Cipla's infringement as part of Gilead's efforts to obtain access to Cipla's R/F/TAF 505(b)(2) Application and related manufacturing information after receiving Cipla's Notice Letter. This also entitles Gilead to a declaratory judgment and associated relief.

62.    A definite and concrete, real and substantial, justiciable controversy of sufficient immediacy and reality exists between Gilead and Cipla regarding infringement of the '028 Patent under 35 U.S.C. §§ 271(a) and (b). Cipla has submitted its R/F/TAF 505(b)(2) Application to the FDA seeking to market its R/F/TAF 505(b)(2) Product in the United States upon approval. Cipla's Notice Letter states that Cipla is seeking to obtain approval to engage in the commercial manufacture, use, or sale of its R/F/TAF 505(b)(2) Product before the expiration of the TAF Hemi Patents, which expire before the '028 Patent. On information and belief, Cipla has made and will continue to make substantial and meaningful preparations to import into the United States or to offer to sell, sell, or use within the United States Cipla's R/F/TAF 505(b)(2) Product prior to the expiration of the '028 Patent.

63.    On information and belief, FDA assesses and seeks to act on 505(b)(2) applications within ten months of submission. On information and belief, there is immediacy and imminent risk of infringement of the '028 Patent because FDA approval and Cipla's commercialization of Cipla's R/F/TAF 505(b)(2) Product may occur as early as late 2026, but

– 19 –

for the 30-month stay caused by this litigation. *See* FDA, PDUFA Reauthorization Performance Goals and Procedures Fiscal Years 2023 Through 2027, at 4 (stating FDA's commitment to "[r]eview and act on 90 percent of priority non-NME original NDA submissions [including 505(b)(2) applications] within 6 months of receipt" and "90 percent of standard non-NME original NDA submissions within 10 months of receipt"). Cipla's actions, including, but not limited to, the submission of its R/F/TAF 505(b)(2) Application with a Paragraph IV Certification and Cipla's systematic attempts to meet the applicable regulatory requirements for approval of its R/F/TAF 505(b)(2) Application indicate a refusal to change its course of action and intent to launch imminently.

64. Pursuant to 28 U.S.C. § 2201, Gilead is entitled to a declaratory judgment that Cipla's manufacture, use, offer for sale, sale and/or importation of Cipla's R/F/TAF 505(b)(2) Product in or into the United States prior to expiration of the '028 Patent, and Cipla's inducement of such conduct, will infringe the '028 Patent pursuant to at least 35 U.S.C. §§ 271(a) and/or (b).

65. If Cipla's marketing and sale of Cipla's R/F/TAF 505(b)(2) Product prior to expiration of the '028 Patent and all other relevant exclusivities are not enjoined, Gilead will suffer substantial and irreparable harm for which there is no adequate remedy at law.

### COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 8,664,386

66. Each of the preceding paragraphs 1–41 is incorporated as if fully set forth herein.

67. On information and belief based on the information presently available to Gilead, at least upon FDA approval of Cipla's R/F/TAF 505(b)(2) Application, Cipla will infringe at least one claim of the '386 Patent under 35 U.S.C. § 271(g), including but not limited to claim 1, either literally or under the doctrine of equivalents, by using, offering to sell, or selling Cipla's R/F/TAF 505(b)(2) Product in the United States or by importing Cipla's R/F/TAF 505(b)(2)

Product into the United States.  Upon information and belief, the product made by the patented process during the manufacture of Cipla's R/F/TAF 505(b)(2) Product is made in India by the process claimed in the '386 Patent.  Upon information and belief, the product made by the patented process during the manufacture of Cipla's R/F/TAF 505(b)(2) Product is not materially changed by subsequent processes and does not become a trivial and nonessential component of another product.  This entitles Gilead to a declaratory judgment and associated relief.

68.     Upon information and belief, Cipla has knowledge of the '386 Patent and knowledge that its acts are encouraging infringement, including at least because Gilead provided notice of the patent and Cipla's infringement as part of Gilead's efforts to obtain access to Cipla's R/F/TAF 505(b)(2) Application and related manufacturing information after receiving Cipla's Notice Letter.

69.     A definite and concrete, real and substantial, justiciable controversy of sufficient immediacy and reality exists between Gilead and Cipla regarding infringement of the '386 Patent under 35 U.S.C. § 271(g).  Cipla has submitted its R/F/TAF 505(b)(2) Application to the FDA seeking to market its R/F/TAF 505(b)(2) Product in the United States upon approval.  Cipla's Notice Letter states that Cipla is seeking to obtain approval to engage in the commercial manufacture, use, or sale of its R/F/TAF 505(b)(2) Product before the expiration of the TAF Hemi Patents, which expire nearly contemporaneously with the '386 Patent.  On information and belief, Cipla has made and will continue to make substantial and meaningful preparations to import into the United States or to offer to sell, sell, or use within the United States Cipla's R/F/TAF 505(b)(2) Product prior to the expiration of the '386 Patent.

70.     On information and belief, FDA assesses and seeks to act on 505(b)(2) applications within ten months of submission.  On information and belief, there is immediacy

and imminent risk of infringement of the '386 Patent because FDA approval and Cipla's commercialization of Cipla's R/F/TAF 505(b)(2) Product may occur as early as late 2026, but for the 30-month stay caused by this litigation. *See* FDA, PDUFA Reauthorization Performance Goals and Procedures Fiscal Years 2023 Through 2027, at 4 (stating FDA's commitment to "[r]eview and act on 90 percent of priority non-NME original NDA submissions [including 505(b)(2) applications] within 6 months of receipt" and "90 percent of standard non-NME original NDA submissions within 10 months of receipt"). Cipla's actions, including, but not limited to, the submission of its R/F/TAF 505(b)(2) Application with a Paragraph IV Certification and Cipla's systematic attempts to meet the applicable regulatory requirements for approval of its R/F/TAF 505(b)(2) Application, indicate a refusal to change its course of action and intent to launch imminently.

71.     Pursuant to 28 U.S.C. § 2201, Gilead is entitled to a declaratory judgment that Cipla's importation into the United States and sale, offer for sale, use, and promotion of the use in the United States of Cipla's R/F/TAF 505(b)(2) Product will infringe the '386 Patent pursuant to at least 35 U.S.C. § 271(g).

72.     If Cipla's marketing and sale of Cipla's R/F/TAF 505(b)(2) Product prior to expiration of the '386 Patent and all other relevant exclusivities are not enjoined, Gilead will suffer substantial and irreparable harm for which there is no adequate remedy at law.

### COUNT V:  INFRINGEMENT OF U.S. PATENT NO. 9,029,534

73.     Each of the preceding paragraphs 1–41 is incorporated as if fully set forth herein.

74.     On information and belief based on the information presently available to Gilead, at least upon FDA approval of Cipla's R/F/TAF 505(b)(2) Application, Cipla will infringe at least one claim of the '534 Patent under 35 U.S.C. § 271(g), including but not limited to claim 1, either literally or under the doctrine of equivalents, by using, offering to sell, or selling Cipla's

R/F/TAF 505(b)(2) Product in the United States or by importing Cipla's R/F/TAF 505(b)(2) Product into the United States. Upon information and belief, the product made by the patented process during the manufacture of Cipla's R/F/TAF 505(b)(2) Product is made in India by the process claimed in the '534 Patent. Upon information and belief, the product made by the patented process during the manufacture of Cipla's R/F/TAF 505(b)(2) Product is not materially changed by subsequent processes and does not become a trivial and nonessential component of another product. This entitles Gilead to a declaratory judgment and associated relief.

75.    Upon information and belief, Cipla has knowledge of the '534 Patent and knowledge that its acts are encouraging infringement, including at least because Gilead provided notice of the patent and Cipla's infringement as part of Gilead's efforts to obtain access to Cipla's R/F/TAF 505(b)(2) Application and related manufacturing information after receiving Cipla's Notice Letter.

76.    A definite and concrete, real and substantial, justiciable controversy of sufficient immediacy and reality exists between Gilead and Cipla regarding infringement of the '534 Patent under 35 U.S.C. § 271(g). Cipla has submitted its R/F/TAF 505(b)(2) Application to the FDA seeking to market its R/F/TAF 505(b)(2) Product in the United States upon approval. Cipla's Notice Letter states that Cipla is seeking to obtain approval to engage in the commercial manufacture, use, or sale of its R/F/TAF 505(b)(2) Product before the expiration of the TAF Hemi Patents, which expire nearly contemporaneously with the '534 Patent. On information and belief, Cipla has made and will continue to make substantial and meaningful preparations to import into the United States or to offer to sell, sell, or use within the United States Cipla's R/F/TAF 505(b)(2) Product prior to the expiration of the '534 Patent.

77. On information and belief, FDA assesses and seeks to act on 505(b)(2) applications within ten months of submission. On information and belief, there is immediacy and imminent risk of infringement of the '534 Patent because FDA approval and Cipla's commercialization of Cipla's R/F/TAF 505(b)(2) Product may occur as early as late 2026, but for the 30-month stay caused by this litigation. *See* FDA, PDUFA Reauthorization Performance Goals and Procedures Fiscal Years 2023 Through 2027, at 4 (stating FDA's commitment to "[r]eview and act on 90 percent of priority non-NME original NDA submissions [including 505(b)(2) applications] within 6 months of receipt" and "90 percent of standard non-NME original NDA submissions within 10 months of receipt"). Cipla's actions, including, but not limited to, the submission of its R/F/TAF 505(b)(2) Application with a Paragraph IV Certification and Cipla's systematic attempts to meet the applicable regulatory requirements for approval of its R/F/TAF 505(b)(2) Application, indicate a refusal to change its course of action and intent to launch imminently.

78. Pursuant to 28 U.S.C. § 2201, Gilead is entitled to a declaratory judgment that Cipla's importation into the United States and sale, offer for sale, use, and promotion of the use in the United States of Cipla's R/F/TAF 505(b)(2) Product will infringe the '534 Patent pursuant to at least 35 U.S.C. § 271(g).

79. If Cipla's marketing and sale of Cipla's R/F/TAF 505(b)(2) Product prior to expiration of the '534 Patent and all other relevant exclusivities are not enjoined, Gilead will suffer substantial and irreparable harm for which there is no adequate remedy at law.

### COUNT VI:  INFRINGEMENT OF U.S. PATENT NO. 9,346,841

80. Each of the preceding paragraphs 1–41 is incorporated as if fully set forth herein.

81. On information and belief based on the information presently available to Gilead, at least upon FDA approval of Cipla's R/F/TAF 505(b)(2) Application, Cipla will infringe at

least one claim of the '841 Patent under 35 U.S.C. § 271(g), including but not limited to claim 1, either literally or under the doctrine of equivalents, by using, offering to sell, or selling Cipla's R/F/TAF 505(b)(2) Product in the United States or by importing Cipla's R/F/TAF 505(b)(2) Product into the United States.  Upon information and belief, the product made by the patented process during the manufacture of Cipla's R/F/TAF 505(b)(2) Product is made in India by the process claimed in the '841 Patent.  Upon information and belief, the product made by the patented process during the manufacture of Cipla's R/F/TAF 505(b)(2) Product is not materially changed by subsequent processes and does not become a trivial and nonessential component of another product.  This entitles Gilead to a declaratory judgment and associated relief.

82.    Upon information and belief, Cipla has knowledge of the '841 Patent and knowledge that its acts are encouraging infringement, including at least because Gilead provided notice of the patent and Cipla's infringement as part of Gilead's efforts to obtain access to Cipla's R/F/TAF 505(b)(2) Application and related manufacturing information after receiving Cipla's Notice Letter.

83.    A definite and concrete, real and substantial, justiciable controversy of sufficient immediacy and reality exists between Gilead and Cipla regarding infringement of the '841 Patent under 35 U.S.C. § 271(g).  Cipla has submitted its R/F/TAF 505(b)(2) Application to the FDA seeking to market its R/F/TAF 505(b)(2) Product in the United States upon approval.  Cipla's Notice Letter states that Cipla is seeking to obtain approval to engage in the commercial manufacture, use, or sale of its R/F/TAF 505(b)(2) Product before the expiration of the TAF Hemi Patents, which expire nearly contemporaneously with the '841 Patent.  On information and belief, Cipla has made and will continue to make substantial and meaningful preparations to

import into the United States or to offer to sell, sell, or use within the United States Cipla's R/F/TAF 505(b)(2) Product prior to the expiration of the '841 Patent.

84. On information and belief, FDA assesses and seeks to act on 505(b)(2) applications within ten months of submission. On information and belief, there is immediacy and imminent risk of infringement of the '841 Patent because FDA approval and Cipla's commercialization of Cipla's R/F/TAF 505(b)(2) Product may occur as early as late 2026, but for the 30-month stay caused by this litigation. *See* FDA, PDUFA Reauthorization Performance Goals and Procedures Fiscal Years 2023 Through 2027, at 4 (stating FDA's commitment to "[r]eview and act on 90 percent of priority non-NME original NDA submissions [including 505(b)(2) applications] within 6 months of receipt" and "90 percent of standard non-NME original NDA submissions within 10 months of receipt"). Cipla's actions, including, but not limited to, the submission of its R/F/TAF 505(b)(2) Application with a Paragraph IV Certification and Cipla's systematic attempts to meet the applicable regulatory requirements for approval of its R/F/TAF 505(b)(2) Application, indicate a refusal to change its course of action and intent to launch imminently.

85. Pursuant to 28 U.S.C. § 2201, Gilead is entitled to a declaratory judgment that Cipla's importation into the United States and sale, offer for sale, use, and promotion of the use in the United States of Cipla's R/F/TAF 505(b)(2) Product will infringe the '841 Patent pursuant to at least 35 U.S.C. § 271(g).

86. If Cipla's marketing and sale of Cipla's R/F/TAF 505(b)(2) Product prior to expiration of the '841 Patent and all other relevant exclusivities are not enjoined, Gilead will suffer substantial and irreparable harm for which there is no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, Gilead respectfully requests the following relief:

(a)      a judgment that Cipla has infringed the TAF Hemi Patents and TAF Sesqui Patent under 35 U.S.C. § 271(e)(2), either literally or under the doctrine of equivalents;

(b)      a judgment pursuant to 35 U.S.C. § 271(e)(4)(A) that the effective date of any approval of Cipla's R/F/TAF 505(b)(2) Application under § 505(b) of the Federal Food, Drug and Cosmetic Act (21 U.S.C. § 355(b)) is not earlier than the day after the expiration of the TAF Hemi Patents and TAF Sesqui Patent, including any applicable exclusivity period to which Gilead is or becomes entitled;

(c)      a judgment declaring that the commercial manufacture, use, offer for sale, sale, and/or importation of Cipla's R/F/TAF 505(b)(2) Product would constitute infringement of the Patents-in-Suit, or induce such conduct, pursuant to 35 U.S.C. §§ 271(a), (b), and/or (g), either literally or under the doctrine of equivalents, and providing any further necessary or proper relief based on the Court's declaratory judgment or decree;

(d)      a judgment permanently enjoining Cipla, its affiliates, subsidiaries, and each of its officers, agents, attorneys, and employees, and those acting in privity or concert with them, from engaging in the commercial manufacture, use, offer to sell, or sale within the United States, or importation into the United States, of Cipla's R/F/TAF 505(b)(2) Product until the day after the expiration of the Patents-in-Suit, including any applicable exclusivity period to which Gilead is or becomes entitled, and from otherwise infringing one or more claims of the Patents-in-Suit, either literally or under the doctrine of equivalents;

(e)      damages or other monetary relief under 35 U.S.C. §§ 271(a), (b), (g), and (e)(4)(C) and/or 35 U.S.C. § 284, including costs, fees, pre- and post-judgment interest, to Gilead if Cipla engages in commercial manufacture, use, offers to sell, sale, and/or importation in or

– 27 –

into the United States of Cipla's R/F/TAF 505(b)(2) Product prior to the latest expiration date of the Patents-in-Suit, including any applicable exclusivity period to which Gilead is or becomes entitled;

(f)       an order that this case is exceptional;

(g)       an award of Gilead's costs, expenses, reasonable attorneys' fees, and such other relief as the Court deems just and proper pursuant to 35 U.S.C. § 285; and

(h)       any such other and further relief as the Court may deem just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*

_____
Jeremy A. Tigan (#5239)
Megan E. Dellinger (#5739)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jtigan@morrisnichols.com
mdellinger@morrisnichols.com
araucci@morrisnichols.com

OF COUNSEL:

Vinita C. Ferrera
Emily R. Whelan
Timothy A. Cook
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

August 6, 2026

*Attorneys for Plaintiff Gilead Sciences, Inc.*

– 28 –